## HURST & SHIPP v. WEATHERS.

1. If an execution, on a judgment, against a sole defendant, issues, after his death, it is a nullity, and a sale under it, of land, which the defendant, in

his life time, had fraudulently conveyed to a third person, vests no title in the purchaser.

Error to the Circuit Court of Randolph.    Before the Hon. Geo. W. Stone.

THIS was an action of trespass to try titles, instituted by plaintiffs, against defendant in error.    The bill of exceptions discloses the following facts:  In 1840, Hurst, Cox & Co. recovered a judgment against one McCollum, in the county court of Randolph, on which execution issued, and was returned no property.    In 1842, said McCollum died, and in 1846, an *alias* execution issued on the judgment, and was levied on the land in controversy, then in possession of defendant, claiming under a fraudulent deed that McCollum had executed to him in his life time.    At the sale by the sheriff, plaintiffs became the purchasers, and received the sheriff's deed for the land.    The court charged the jury, that if they believed all the evidence, the plaintiffs were not entitled to recover.    To this charge the plaintiffs excepted, and now assign it as error.

RICE & MORGAN, for plaintiffs in error.

1. In the absence of any fraudulent conveyance of land by a judgment debtor, before judgment rendered, and before his death, his land cannot be sold after his death, even under a judgment rendered in his life time.    Hall v. Abercrombie, 6 Ala. Rep. 657.

2. But neither the reason of this rule, nor the rule itself, applies, when there is a fraudulent conveyance made by him before the plaintiff obtains judgment, and he dies after judgment rendered, and an execution issued.    In such case, the fraudulent conveyance deprives the grantor and his heirs of all interest in the land, as against the fraudulent grantee, and it never can descend to the heirs of the grantors.    No *scire facias* will lie against the heirs in such a case.    Nor will *scire facias* lie against a fraudulent grantee.    Where the fraudulent grantee takes, and holds the lands before and after judgment, it may be sold under the judgment, precisely as if

the judgment debtor had not died. Carter v. Castleberry, 5 Ala. Rep. 277; Harrison et al. v. Campbell, 6 Dana, 263.

3. If, in the case of such fraudulent conveyance, the creditor does not obtain a lien and judgment in the life time of the debtor, but only obtains judgment after his death, against his representative, then perhaps the creditor would have to go into chancery for relief against the fraudulent grantee. 6 Dana's Rep. 263. But where, in the life time of the debtor, the plaintiff obtains a judgment and lien on the land fraudulently conveyed, he may sell it after the debtor's death, and the purchaser at sheriff's sale may maintain ejectment, or trespass to try title, against the fraudulent grantee in possession. An attachment levied, and judgment obtained in the life time of a debtor, create a lien upon lands of that debtor, fraudulently conveyed to a third person, after the debt was created on which such attachment and judgment were founded. If the debtor lives, the lands can be sold under such judgment; if he dies, there is no reason why his death should operate to the prejudice of the creditor, or in favor of the fraudulent grantee. In other words, the death of the fraudulent grantor, does not take away from a judgment creditor, his right to sell the lands held by the fraudulent grantee. The levy of the attachment creates a lien, which cannot affect the heirs of the fraudulent grantor, and which is operative only against the fraudulent grantee, who can show his rights on the trial of this suit, as fully as he could have shown them if the debtor were now alive. Baldwin v. Leftwich, 12 Ala. Rep. 838.

4. The rule announced in Hall v. Abercrombie, 6 Ala. R. 657, rests upon a solid reason—that upon the death of the debtor, his lands descend to his heirs, and therefore cannot be sold without a direct proceeding against them, whose rights are to be affected. A fraudulent grantee cannot be reached at law, until after a sale, and sheriff's deed. It is admitted the fraudulent grantee, can be reached by a purchaser at sheriff's sale, by action of ejectment, provided the judgment debtor is alive. The fraudulent grantee, need not have notice of the sheriff's sale, or sheriff's deed. He is not affected, until the purchaser at sheriff's sale brings ejectment against him, and proves the fraud. And if the judgment

debtor is dead, why make the rule, or mode of proceeding against a fraudulent grantee, different from that which so justly obtains whilst the debtor lives?

L. E. Parsons and A. J. Walker, contra.

1. The fact that this judgment was obtained on an attachment, does not aid the sale. Land cannot be sold under a judgment, after the death of the defendant. Fitzpatrick v. Edgar, 5 Ala. 501; Withers v. Harris, 1 Salk. 600; Holloway v. Johnson, 7 Ala. 660; Erwin v. Dundas, 4 How. U. S. 58.

2. The same is the rule of law in respect to a *venditioni exponas*, to sell lands tested after the defendant in execution had died. Samuel v. Zachery, 4 Ire. 377.

3. A *sci. fa.* would have lain against the heirs and terre-tenants—*quere.*

CHILTON, J.—It is very certain, that the deed from McCollum, to the defendant, Weathers, being made to delay, hinder and defraud creditors, is void under the statute of frauds, as against a subsequent *bona fide* purchaser, even though such purchaser have notice of the prior deed; for though he has notice of it, he knows it to be fraudulent. Doe ex dem. &c. v. Manning, 9 East, 59; Carter v. Castleberry, 5 Ala. Rep. 279, and authorities there cited. And the purchaser may impeach such fraudulent conveyance, as well in law, as in equity. Ibid. But the point in the case before us is, are the plaintiffs so situated, as to enable them to raise the question? It is not sufficient, that the defendant can take nothing as against them, being creditors of the fraudulent vendor, by his corrupt bargain. They must recover upon the strength of their own title. Unless the plaintiffs acquired their title by their purchase under the execution, they cannot recover, however fraudulent, and void, the purchase by the defendant may be.

Had McCollum lived, the sale to the defendant being fraudulent as against the plaintiffs, would, as to their judgment, have passed no title, but it would have remained in McCollum, subject to be levied upon, and sold in satisfaction of the judgment against him. Carter v. Castleberry, *supra.* As between McCollum and the defendant, the conveyance

was effectual and binding; it was only void as to creditors and *bona fide* purchasers for valuable consideration. And as McCollum's capacity to hold the title ceased by his death, the title at law must have vested absolutely in his vendee, or have descended to his heirs. It is insisted, that the title could not have descended upon the heirs, because they are concluded by the deed of the ancestor, and that the deed being void as to the plaintiffs, they have acquired the title by the execution sale, and sheriff's deed. Further, that as the judgment creditor could not have execution of the land by *scire facias* against the heirs, unless he is entitled to the remedy which he has pursued, the legal remedy has been lost, by reason of the fraudulent sale, which the law declares *utterly void*, so far as it affects the defrauded creditor.

In Harrison v. Campbell et al. 6 Dana's Rep. 263, 268, the debtor, one Davenport, had made a fraudulent conveyance of his real estate, and died. The creditor had sued the administrator, and obtained judgment. He also sued the heir, who upon the issue of *riens per descent*, defeated the action. He then filed his bill against the heir and fraudulent vendee, to have the land sold for the satisfaction of his judgment, having exhausted his legal remedy by return of "no property" on an execution. The court say that, "regarding the action, and judgment against the heir, as a proceeding against the land itself, and to determine its liability, this anomaly would be prevented. 1. The heir being without interest in the land, is a stranger to both the debt and the land, and is yet made the medium of ascertaining the debt, and giving judgment against the land. 2. The question of fraud in the ancestor's deed, on which the liability of the land depends, would be tried, when the only person interested in defending the title, is not, and cannot be, a party to the issue. 3. Consequently, the judgment against the land would not be conclusive, and when the creditor should attempt to avail himself of it by levying his execution, the person claiming it under the deed might contest its liability, and a new trial of the same matter, between different persons, and perhaps with a different result, would ensue." See also Rawls v. Graham, 4 Monr. 122, where it is decided, that the remedy of the creditor upon the land is not by descent, in

such case—that is, not against the heir, but against the fraud-
ulent grantee of the intestate.

As the law exists in England, where the plaintiff in the
judgment, after a return of *nihil*, upon a *scire facias* against
the evecutor, may have such writ against the heir and terre-
tenants, or against the terre-tenants alone, if the heir have
been summoned, or there be no heir, or the heir have no
land descended, the question as to the validity of the ances-
tor's conveyance to the tenant in possession, who might set
it up in bar of the extent upon the writ of *elegit*, perhaps
might properly be tried.   Be this as it may, our statute only
authorizes the writ of *scire facias* against the heirs and personal
representative, in cases where *lands have descended* to the
heirs, and the personal representative has failed to apply to.
the orphans' court for a sale of them.   Clay's Dig. 197, § 27.
With us, it is necessary in a proceeding by *scire facias*, to
have execution of the land by sale, in satisfaction of the
. judgment, to show that it descended to the heir, whose title
by the judgment upon the *scire facias*, and sale made in pur-
suance of it; becomes divested; while in England, the heir
is proceeded against, not as heir, but as terre-tenant, and the
land is not sold, but extended by the writ of *elegit*.   3 Rep.
12; Cro. Eliz. 872; Cro. Jac. 506; see also Fitzpatrick et
al. *v.* Edgar, 5 Ala. Rep. 499.   We arrive, therefore, at the
conclusion, that the land, in this case, did not descend to the
heir, and consequently, could not be made subject to the
judgment by *scire facias*.   And as by the death of McCol-
lum before the issuance of the execution, the title in him was
determined, it must be in the defendant, charged in equity
with the payment of the plaintiff's judgment, by reason of
the fraud in the conveyance.

In Burk's adm'r v. Jones 13 Ala. 167, we held that the lien
of a judgment on lands, which attaches by virtue of the right
which the judgment creditor has to have the lands extended
by the writ of *elegit*, is destroyed by the death of the judg-
ment debtor, and that upon the declaration of the insolvency
of the estate, before a judgment on *scire facias*, subjecting
the land, the estate became vested in the administrator for
the purpose of paying all the debts *pro rata*.   2 Brock. Rep.
252; 2 Call's Rep. 125; 4 Hen. & Munf. 57; 1 Brock. R.

170.   So that it is clear no right to sell the land upon the execution against McCollum, which issued after his death, could exist by virtue of any supposed lien of the judgment. The case of Abercrombie v. Hall, 6 Ala. R. 651, and Burk's adm'r v. Jones et al., *supra*, are in point, to show that an execution issued against a dead defendant is, as to his land, a nullity.   See also, authorities on the brief of defendant's counsel, and Stewart v. Nuckles, at this term.   From these authorities, it follows that the plaintiffs in error took no title by their sheriff's deed.   The charge of the court below was consequently correct.   We apprehend there can be no question as to the equitable remedy of the plaintiffs after they shall have exhausted their legal remedy, if the facts be as stated in the bill of exceptions.   Let the judgment be affirmed.